TEMPLE LUMBER CO. et al. v. PULLIAM et al. (No. 792—4452.)

(Commission of Appeals of Texas, Section A. June 16, 1926.)

1. Adverse possession ⊂⊃107—Occupant of 40 abres as trespasser thereafter obtaining, but failing to record, tax deed to all of owner's interest in league, held not entitled to more than 160 acres under adverse claim (Rev. St. 1925, art. 5510).

Under Rev. St. 1925, art. 5510, occupant of 40-acre tract as trespasser, who thereafter secured tax deed to all of owner's interest in land within league but failed to record deed, *held* entitled only to 160 acres upon his adverse claim, notwithstanding he cut timber and purported to sell tracts under tax deed.

2. Adverse possession ⊂⊃107.

Cutting timber, and sale of portions of tract, *held* not taking possession of entire tract, within Rev. St. 1925, art. 5510, by occupant of small portion of tract claiming whole tract adversely under tax deed.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Trespass to try title by Mrs. S. W. Pulliam and others against the Temple Lumber Company and another. Judgment for plaintiffs was affirmed by the Court of Civil Appeals (272 S. W. 587), and defendants bring error. Reversed and rendered.

W. T. Davis, of San Augustine, W. F. Goodrich and J. W. Minton, both of Hemphill, and Smith, Crawford & Sonfield, and Cousins & Lipscomb, all of Beaumont, for plaintiffs in error.

James G. Barker, of Hemphill, and Kennerly, Williams, Lee & Hill, Jesse J. Lee and P. O. Settle, all of Houston, for defendants in error.

BISHOP, J. The defendants in error, Mrs. S. E. Pulliam, widow, and Mrs. S. T. McDaniel, Mrs. L. E. Love, and W. T. Pulliam, chil-

dren and heirs of W. T. Pulliam, deceased, sued and recovered judgment against Temple Lumber Company and T. L. L. Temple, plaintiffs in error, for all of the Henry Canfield league of land in Sabine county, Tex., except certain tracts specified in their petition, relying on title alleged to have been perfected under the 10 years' statute of limitation. This judgment was affirmed by the Court of Civil Appeals. 272 S. W. 587.

W. T. Pulliam, deceased, entered upon this league in 1865, and cleared, occupied as his home, and cultivated, about 40 acres thereof until 1883, when he removed from this 40 acres, and, thereafter, held possession by tenants until 1900. In the fall of 1887 his daughter and son-in-law, J. J. Love, moved upon this place as his tenants and continued to reside thereon until 1900, when Love, with Pulliam's consent, sold 160 acres of the league, including the 40 acres, to T. R. Smith. In 1881 Pulliam purchased at a tax sale the entire league, with the exception of a tract of 350 acres which was well defined, receiving a tax deed therefor, which was never placed of record.

[1] Pulliam entered upon and remained ·in actual possession of the 40 acres without obtaining permission or consent of the owner, and though he held peaceable possession thereof, cultivating, using, and enjoying the same, he did not claim this land or any. part of the league until he secured the tax deed. When he secured the tax deed, he began claiming under same all the land in the league except said 350 acres, being the land described in said deed. He continued to assert this claim until he died in 1919. In 1883, before Pulliam moved from the 40 acres, which was known as the old Pulliam place, an agent of the owner of the land described in the tax deed offered to sell Pulliam the land he was occupying, and Pulliam refused to buy, telling the agent that he owned that land and had a deed to it. There is no evidence in the record to show that Pulliam or any one else ever notified either the agent or the owner that Pulliam had a deed to or was claiming all the league except the 350 acres. While there is evidence in the record that Pulliam told others that he held a deed to all the league except 350 acres, and was claiming the land described therein, there is no evidence that either the owner or his agent had actual notice of this claim. During the year 1881, Pulliam sold several tracts out of the league, executing deeds to the purchasers. After he got the tax deed, he cut some timber near the 40 acres of land. The 160 acres sold by Love to Smith, which included the 40 acres, is no part of the land for which defendants in error sued and recovered judgment.

When Pulliam entered upon this land in 1865, he did so without obtaining the consent or permission of the owner. He was a naked trespasser. His entry had the effect to oust the owner from possession of that portion of his land which Pulliam occupied. The owner still held constructive possession of all the lands owned by him in the league except the 40 acres, of which Pulliam had actual possession. The tax deed and Pulliam's claim thereunder did not deprive the owner of his constructive possession of any of the land except 160 acres, including the 40 acres, of which Pulliam had actual possession.

[2] Article 5510, R. C. S. of 1925, which was in force at the time Pulliam obtained the tax deed in 1881, has the effect of granting title to lands to a trespasser. having peaceable and adverse possession thereof cultivating, using, and enjoying same for a period of ten years next after the owner's cause of action therefor has accrued, and expressly provides that such peaceable and adverse possession shall "embrace not more than 160 acres. including the improvements or the number of acres actually inclosed, should the same exceed 160 acres." The only exception to this limitation of the number of acres which may thus be acquired by a trespasser is expressly stated in this article, and is when possession is taken and held under a recorded written memorandum of title, which fixes the boundaries of the possessor's claim. Pulliam's possession of the 40 acres was taken long prior to the time he obtained the tax deed, and his cutting timber and sale of tracts on the survey did not constitute a taking of possession of the entire tract under the tax deed in contemplation of this article. This deed was not recorded as required by the exception to the limitation of the number of acres to which he could acquire title under the provisions of this article. Vergara v. Myers (Tex. Com. App.) 239 S. W. 944.

Pulliam acquired title to only 160 acres by reason of his possession of the 40 acres, and. as the land in controversy does not include any part of this 160 acres, we recommend that the judgments of both courts be reversed and judgment rendered for plaintiff in error.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals reversed, and judgment rendered as recommended by the Commission of Appeals.